UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN D. SIGSBEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19-CV-00913-JD |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

John Sigsbee applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work due to a range of health conditions causing him significant pain and mobility issues. An ALJ found, however, that Mr. Sigsbee retained the capacity to perform sedentary work with certain restrictions and there were a significant number of jobs he could still perform in the national economy. Mr. Sigsbee's claim for benefits was denied and he now appeals that finding. The matter is fully briefed and ripe for decision. [DE 14, 15, 16]. For the reasons set forth below, the Court remands this matter to the Commissioner for further proceedings.

### **I. FACTUAL BACKGROUND**

Mr. Sigsbee filed for disability benefits on December 28, 2015, alleging disability beginning June 20, 2015. He has reported suffering from degenerative disc disease, hearing loss, vertigo, Gastro-esophogeal reflux disease (GERD), a deviated septum, pain in both knees, left partial finger amputation, infectious rash, anxiety, post-traumatic stress disorder (PTSD), depression, a partially-severed spine, broken ribs, and chronic liver failure. On June 5, 2018, Mr. Sigsbee participated in a hearing before an ALJ without representation. Due to the cumulative

1

effects of these conditions, Mr. Sigsbee testified that he is unable to maintain a job, requires significant assistance from his wife to move around their home, and struggles with significant pain. (R. 201, 219-220). Mr. Sigsbee testified that his most significant barriers to employment are his knees and back. (R. 201). In his most recent job, Mr. Sigsbee installed parts at an RV manufacturing company. (R. 191). However, he testified that he resigned from that position due to health-related absences. (R. 194). Previously, he worked as an installer, glass installer, line assembler, cabinet assembler, and store manager. (R. 25).

Medical diagnoses and imaging confirm that Mr. Sigsbee suffers from degenerative changes to his lumbar spine. (R. 559, 968). Providers indicate that Mr. Sigsbee needs a cane for support due to back pain and have observed some range of motion deficits and antalgic gait. (R. 579, 1000). He was diagnosed with vertigo in 2015 (R. 1025); an esophagogastroduodenoscopy showed GERD in 2017 (R. 958); and has a documented history of hearing loss (R. 505). However, the ALJ found that several of the listed conditions did not impact Mr. Sigsbee with the severity alleged.

The ALJ found that Mr. Sigsbee suffered from the following severe impairments: including degenerative disc disease, hearing loss, vertigo, and GERD. (R. 18). The ALJ found that Mr. Sigsbee retained the ability to perform sedentary work with several limitations, including "no ladders, ropes, and scaffolds; no slippery or uneven surfaces; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, crawl, and kneel; cannot work at unprotected heights or around dangerous machinery; cannot operate a motor vehicle as a condition of employment." (R. 21). Based on the residual functional capacity ("RFC") finding, the ALJ concluded that Mr. Sigsbee could no longer perform his previous relevant work. (R. 25). The ALJ found that Mr. Sigsbee could however perform other jobs in the economy including

surveillance monitor, small parts sorter, and laminator. (R. 26). Ultimately, the ALJ found that Mr. Sigsbee did not qualify as disabled. After the Appeals Council denied review (R. 2), Mr. Sigsbee filed this action seeking judicial review of the Commissioner's decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

3

2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and

mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. Sigsbee raises two arguments in support of remand. First, he argues that the ALJ erred by failing to consider the opinion of the agency's consultative examiner, Dr. Gupta, that Mr. Sigsbee's cane was medically necessary in determining the extent of his limitations and subsequently ignored substantial evidence. Second, Mr. Sigsbee argues that the ALJ failed to properly assess the impact of his pain on his ability to concentrate for extended periods of time. The Court only addresses the first argument, as the Court agrees that the ALJ erred by failing to adequately address Dr. Gupta's opinion and ignoring substantial evidence. This error requires remand for further consideration. The Court need not address the remaining arguments, which can be addressed by the parties on remand.

The ALJ made no reference to a hand-held assistive device in the RFC finding. In omitting this, the ALJ implicitly found that Mr. Sigsbee's cane was not medically necessary. However, in evaluating the record, the ALJ engaged in impermissible "cherry-picking" of supportive evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ explained his rationale for this decision by stating that "although providers indicated

5

that the claimant needs a cane for support due to back pain [], exams showed he is able to walk heel to toe and tandem without difficulty, able to get on and off the examination table without difficulty and did not require any assistance." (R. 23). The ALJ cited to Mr. Sigsbee's exam results from September 3, 2016 to justify excluding the cane from the RFC. *Id*. At the September 3 exam, Dr. Gupta, an agency-hired consultative examiner, observed that Mr. Sigsbee was able to walk heel to toe and tandemly without difficulty and could get on and off of the exam table without difficulty. (R. 579). However, the ALJ failed to acknowledge Dr. Gupta's statement from the same examination that Mr. Sigsbee's cane was medically necessary as well as his ability to stand from a sitting position with difficulty. *Id*. The ALJ also failed to note the July 12, 2016 findings of Dr. Gupta, wherein he observed that Mr. Sigsbee "has an antalgic gait without an assistive device"; is "*not* able to walk heel to toe and tandemly without difficulty," and; is "able to stand from a sitting position with *difficulty*." (R. 569) (emphasis added).

Additionally, despite assigning great weight to the evaluation of state agency medical consultant Dr. Concoran (R. 24), the ALJ did not acknowledge that Dr. Concoran also described the cane as "medically necessary" in his report. (R. 279). The ALJ also gave great weight to the opinion of another state agency medical consultant, Dr. Sands. (R. 24). Dr. Sands opined that Mr. Sigsbee has several exertional limitations, including "antalgic gait [without] assistive device," "difficulty with heel/toe and tandem," and difficulty with "standing from sitting." (R. 266). The ALJ has impermissibly cherry-picked the evidence by concluding that Mr. Sigsbee's medical records support the omission of a cane in his RFC without considering substantial evidence that points to the contrary. *Denton*, 596 F.3d at 425. Therefore, remand is required.

In addition to cherry-picking evidence, the ALJ failed to offer an adequate rationale for discounting Dr. Gupta's opinion. Dr. Gupta is an agency-hired consultative examiner who

evaluated Mr. Sigsbee twice in person. (R. 567, 577). An ALJ is not required to accept an agency physician's opinion, but "rejecting the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, No. 19-3031, 2020 WL 5105694, at *4 (7th Cir. Aug. 31, 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (given their employment relationship, the agency's doctors are "unlikely . . . to exaggerate an applicant's disability"). However, there was no explanation for this unusual step here. Additionally, an ALJ can only reject an examining physician's opinion, such as Dr. Gupta's, for reasons supported by substantial evidence in the record and a contradictory opinion of a non-examining physician alone does not suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ here does not cite to such substantial evidence.

In reviewing the weight assigned to sources of evidence in turn, the ALJ evaluated the credibility of Drs. Hill and Gange, the state agency mental health consultants; Drs. Sands and Corcoran, the state agency medical consultants; Dr. Nordstrom, the consultative psychological examiner; Clarissa Sigsbee; the claimant's wife; Mr. Sigsbee himself; and Dr. Kennedy, his treating physician. (R. 23-24). However, the ALJ did not evaluate Dr. Gupta's credibility or assign him any weight, and subsequently gave no reason not to credit him. If the RFC determination conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The regulations also state "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 CFR §404.1527(c). In evaluating any medical opinion, an ALJ must consider the examining relationship, treatment relationship, length of the treatment relationship, relationship and frequency of examination, nature and extent

of the treatment relationship, supportability, consistency, specialization, and other relevant factors. *Id.* The ALJ did not evaluate Dr. Gupta's opinion using any of these factors. In fact, he never mentioned Dr. Gupta by name in his decision. This sort of "[l]imited engagement . . . does not create the logical bridge necessary for the court to provide the Plaintiff a meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). This omission merits remand for further consideration.

The Commissioner argues that the ALJ's failure to consider Dr. Gupta's analysis of the cane is harmless error because Mr. Sigsbee could perform the identified jobs even with a cane. In support of this argument, the Commissioner points to the testimony of vocational expert ("VE"). (R. 227). At the hearing, the ALJ posed a hypothetical to the VE about whether a person with the RFC assigned to Mr. Sigsbee could still perform the jobs she had suggested if that person required "the use of a one-handed cane to ambulate," to which the VE responded the jobs would not be affected. *Id*. There was no further discussion of the nuances regarding how a cane would impact Mr. Sigsbee's potential work; no discussion, for example, of the impact of a cane on his ability to carry items or stand for substantial periods of time. By narrowing his question to "the use of a one-handed cane to ambulate," the ALJ did not pose whether the use of a cane to stand, balance, stoop, crouch, crawl, and kneel, which his RFC permits occasionally, changes the VE's testimony. Significantly, the ALJ did not discuss these questions or the VE's testimony on this matter in his written decision to explain why he did not include use of a cane in the RFC. The agency "may not bolster the ruling with evidence the ALJ did not rely on." *Shauger v. Astrue,* 675 F.3d 690, 697 (7th Cir. 2012). If the ALJ believed that the VE's testimony definitively addressed the impact of the cane, he failed to create a logical bridge for the Court to rely on in order to provide Mr. Sigsbee a meaningful review.

The Commissioner cites *Collett-Brown v. Saul*, which found that it was harmless error for the ALJ not to discuss the claimant's need for an assistive device in the RFC where the VE identified a significant number of jobs that the claimant could perform, even if she is required to use a crutch or walker to ambulate. No. 1:19-CV-170, 2020 WL 1685717, at *9 (N.D. Ind. Apr. 6, 2020). However, the VE in *Collett-Brown* specifically differentiated the need for a cane to ambulate and stand. The VE testified that "if a person only needed the crutch or walk[er] for ambulating, not while they're standing that they could still do that job." *Id.* Here, the VE did not discuss whether someone with the RFC ultimately assigned to Mr. Sigsbee could perform the jobs she cited if they needed the cane to stand, balance, stoop, crouch, crawl, and kneel. This omission is harmful as there is evidence in the record that suggests Mr. Sigsbee needs the cane for more than walking because standing unassisted for even two minutes comes with great difficulty for him (R. 219-220), it assists him with "support and balance" (R. 545, 577), and prevents him from falling (R. 210-11, 705). Further, in *Shramek v. Apfel*, which is cited in *Collett-Brown*, the Seventh Circuit found the errors in the ALJ's decision to be harmless because the ALJ in fact submitted a hypothetical to the VE that included all the functional limitations set forth by the claimant's treating physician and was consistent with the claimant's own testimony regarding her limitations. 226 F.3d 809, 814 (7th Cir. 2000). Here, the ALJ failed to include all the supportable functional limitations of Mr. Sigsbee's need for a cane in the hypothetical to the VE. Therefore, further consideration of the evidence on remand may lead the ALJ to a different RFC determination and the need to pose a different hypothetical to the VE.

Additionally, as Mr. Sigsbee cites in his brief, courts in the Seventh Circuit have found an ALJ's failure to account for the need for a cane or specifically explain the rationale from excluding it from a claimant's RFC to be reversible error. *See Newell v. Astrue*, 869 F. Supp. 2d

875, 892 (N.D. Ill. 2012) (finding "an ALJ errs when he does not include [] use [of a cane] in the RFC assessment *and* does not explain his reasons for not doing so"); *Cruz v. Astrue*, 746 F. Supp. 2d 978, 989 (N.D. Ind. 2010). Given these open questions, the record regarding how Mr. Sigsbee's ability to work would be impacted by the need for a cane is not so clear as to render the error harmless. The outcome on remand is not predetermined in this case, and a finding of harmless error would be inappropriate.

Accordingly, the Court reverses and remands for additional proceedings, during which the parties may also address the other arguments Mr. Sigsbee has raised on appeal. As the record is not so one-sided as to compel a finding of disability, Mr. Sigsbee is not entitled to an outright award of benefits.

## V.  CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  October 14, 2020

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

10